## David B. Allen *v.* Samuel Hopson.

A party purchasing a defective title, with full knowledge of the defects, cannot after-
wards avail himself of such defects as a ground for relief against the payment of
the purchase money.

Fraud is equally cognizable at law as in equity. The only reason for coming into a
court of chancery in such cases is for *discovery*, which is not asked in this case.

Where a judgment had been obtained at law, and the defendant sought to avoid that
judgment by a bill in chancery, charging fraud and illegality in the original con-
tract; held by the court, that this defence might have been made at law, and [that
the judgment of the court of law precluded the complainant from coming into a
court of chancery.

Courts of equity will decree void contracts to be delivered up; but where they are
sought to be enforced, courts of law may equally declare them void.

This bill states that in December, 1835, David B. Allen, the
complainant, purchased of Samuel Hopson a tract of land, lying
in the county of Coahoma, and agreed to pay for said land forty-
seven hundred dollars; twenty-two hundred of which was to be
paid to Wiley Davis, John B. Davis and A. A. Halsey, of whom
Hopson bought the land, and to whom he owed that sum of the
original purchase money, and twenty-five hundred dollars to said
Hopson. Allen executed an obligation, binding himself to take
up Hopson's obligation to the Davises and Halsey, and also an
obligation to Hopson to pay him the sum of twenty-five hundred
dollars, one half on the first of July, 1837, and the residue on the
first of July, 1838. This latter part of the agreement will ap-
pear more fully by the following bond:

"Know all men by these presents, that I, David B. Allen, am
held and firmly bound unto Samuel Hopson, his heirs and assigns,
in the just and full sum of twenty-five hundred dollars, to be paid
in two several equal payments, viz: one thousand two hundred
and fifty dollars on the first day of July, 1837, and the second
payment of one thousand two hundred and fifty dollars to be
made on the first day of July, eighteen hundred and thirty-eight,
well and truly to be paid, I bind myself, my heirs, execu-

tors and administrators firmly by these presents. In witness whereof I have hereunto set my hand and seal, this 12th day of December, 1835.

"The condition of the above obligation is such, that if Wiley Davis, John B. Davis and A. A. Halsey, of the state of Mississippi, do not make a *bona fide* right and title to David B. Allen to a certain tract of land, which Samuel Hopson cleared, cultivated, and lived on, on the river Sunflower, in the state of Mississippi, by the first day of July, 1836, then the said David B. Allen is to return the said land to the said Samuel Hopson on the first day of January, 1837, or otherwise pay the above sum of twenty-five hundred dollars, according to the specification of the above obligation, and which obligation is to remain in full force and virtue.

"And it is further distinctly understood, that if said Wiley Davis, John B. Davis and A. A. Halsey fail to make a title to said land, and the said David B. Allen chooses to take the chances of the government and others for a right and title to said land, at the time aforesaid to return said land, then this obligation to be in full force. (Signed) DAVID B. ALLEN. [Seal.]

"J. P. McDONALD, }
GEO. B. HOPSON,  } *Witnesses.*"

Hopson represented the title to the land to have been secured by an Indian reservation claim called a "float," and referred Allen to one J. P. McDonald, who assured Allen that the statement of Hopson was correct; said there was scarcely any doubt about the title, and advised Allen to complete the contract. Under this advice, in February, 1837, Allen, at the request of Hopson, executed his two obligations for twelve hundred and fifty dollars each, payable respectively on the first day of July, 1837, and 1838, and took in the bond above set forth. Hopson, at the time of said sale, was settled on the land, and had made improvements thereon, which were included in the purchase. Suits were brought on the said notes of Allen to Hopson, and judgment obtained thereon in October, 1839, for two thousand and twelve dollars thirty-one cents, some payment having been made before suit was brought.

The bill charges that Hopson never had any title to the land;

that the title is still in the government of the United States; that Hopson was a mere trespasser on the same; that the representations of Hopson and McDonald were false and fraudulent; that the sale is void, contrary to the laws of the United States, and in opposition to the settled policy of the government; that complainant has not yet obtained a title to the land, and is willing to surrender all claim thereto, upon being placed in his original situation, and having the money paid by him returned. The bill prays a perpetual injunction against the collection of Hopson's judgments against Allen; a rescission of the contract, and a return of the money paid by Allen on the notes to Hopson.

The answer of Hopson states, that on the 12th day of December, 1835, Allen came to his house and said he was pleased with his land, on which he had built good and comfortable cabins, and cleared about twenty acres of land, on which was a fine crop of corn; the land was fine cotton land, and exceedingly fertile and valuable. Previous to that time Hopson had bargained with the Davises and Halsey to secure a title by "float" to said land, being four hundred and forty acres. They agreed to float the land by the first day of July, 1836, for which Hopson bound himself to pay them the sum of twenty-two hundred dollars. At the strong solicitation of Allen, Hopson agreed to sell his possessory interest in said land, his buildings and improvements, crop thereon and the obligation of Davises and Halsey to float the land for the sum of forty-seven hundred dollars, as stated by Allen, the latter agreeing to rely on the Davises and Halsey, or on the government of the United States for his title, and not on any guaranty of Hopson. Under this agreement Allen took possession of the land, and still has it. In two or three weeks after this contract was made, Allen took up the obligation of Hopson to the Davises and Halsey, for floating the land, and the same was cancelled and Allen's obligation substituted therefor. In the month of November, 1836, Allen notified Hopson that he would keep the land, and pay the twenty-five hundred dollars, according to the terms of the agreement. Hopson denies the other material allegations of the bill, and says Allen made his full defence at law, and cannot now be heard in chancery.

A. M. CLAYTON for complainants.

By the decisions of this state, the sale of said land and of the improvements was void, being contrary to the settled policy of the government of the United States. 1 How. 150.

The contract being void, and founded on fraud, and contrary to public policy, equity will still take jurisdiction and give relief. Apart from the judgment, there is no doubt equity would give relief. In cases of gaming and usury, and of other acts against statutory provisions, chancery often relieves against judgments founded upon instruments contravening those statutes. See Rex *v.* Duke of Beaufort, 2 Atk. 190; Rich *v.* Sydenham, 1 Ch. Cas. 202; Ch. Dig. 193–94; 2 Rob. Prac. 220.

The application of this rule, and of the principle of the case in 1 How. 150, seems to me to authorize the interposition of the court in this instance. The charge of fraud, too, against the defendant and his agent, which is admitted by the demurrer, forms an indisputable ground for the interposition of the court. All which is respectfully submitted.

BRADFORD and GHOLSON for respondent.

Defendant insists, first, that, upon complainant's own showing in the bill and exhibits, there was no fraud practised on him, or intended to be practised on him, by defendant, either directly or indirectly, by any act of Hopson, or by any one at his instance or procurement; but that complainant is only endeavoring to avoid what has turned out a bad speculation, brought upon him by his own avarice.

Second. It is clearly shown by the exhibit A, and complainant's manner of stating his case, that nothing was ever sold by Hopson to him but his improvements and labor, which appears to have been enjoyed by complainant to this day, without molestation or hindrance, and which he seeks to make perpetual.

Third. The complainant is estopped from being heard in this court, having defended the case at law, or at least having had every opportunity to have done so, successfully, if the facts set forth in his bill are true. He had a clear, unembarrassed defence at law, and, having assigned no reason for not making it, his palpable negligence will not be excused.

David B. Allen *v.* Samuel Hopson.

Where a court of law and a court of equity have concurrent jurisdiction of the matter in dispute, the court which takes the jurisdiction settles the matter conclusively.    Thompson *v.* Hill, 3 Yerg. Tenn. R. 167.

A court of equity will not entertain jurisdiction of a cause which has undergone a full and fair investigation at law, unless the party has been prevented, by fraud or accident, or the act of the opposite party, without any negligence on his own part, from making his own defence.    3 Yerg. 99, Thurmond *v.* Durham and White; Kearney and Moore *v.* Smith and Jackson, same book, 127.

A court of equity will not entertain jurisdiction where there has been a defence at law.    Stone *v.* Moody and Perry, 6 Yerg. Tenn. R. 31; see Lewis's Ex'ors *v.* Brooks, ibid. 167.

Fourth. The defendant should have some reason why he did not defend at law, otherwise, in every case, a court of equity would entertain jurisdiction when its powers were concurrent with a court of law, notwithstanding there had been a trial at law.    Complainant should have made an exhibit of the record of the suit at law, in order to inform the court that injustice had been done him by the judgment he seeks to avoid.


The CHANCELLOR.

This case was submitted on a motion to dissolve the injunction on the face of the bill.

That the complainant understood that the title which he was purchasing was of a doubtful and embarrassed character, is obvious from the condition of his bond.    In the first place, he seems to have agreed to accept such title as Davis and others could make him by the 1st of July, 1836, with the liberty of returning the land to Hopson if they failed to make him a title, or of keeping the land, and, in the language of the bond, "take the chances of the government for a right and title to said land," in which latter event his bond to Hopson for the payment of the money was still to be valid.    This proves, demonstrably, that Allen knew that he was purchasing a matter of doubtful and hazardous speculation.

No principle can be better settled, or more consonant to sound morals, than that a party purchasing a defective title, with full knowledge on that subject, cannot afterwards avail himself of such

defects, as a ground for relief against the payment of the purchase money. But apart from this view of the case, I am clearly of opinion that the judgment at law precludes the complainant from coming into this court. The two grounds upon which the bill rests, are—

First. The charge of fraud in the vendor; and,

Second. The allegation that the contract is void, being a sale made by a mere trespasser on the land of the United States.

Fraud is equally cognizable at law as in equity. The only reason for coming into a court of chancery in such cases, is for discovery, which is not asked in this case.

The other ground, to wit: the alleged illegality of the contract, was equally available at law. Courts of equity will decree void contracts to be delivered up, but, where they are sought to be *enforced,* courts of law may equally declare them void. This latter question was settled by this court, and afterwards by the High Court of Errors and Appeals, in the case of Green *v.* Robinson.

There is no reason whatever assigned why defence was not made at law.

The injunction must be dissolved without damages.